UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JESSIE SHANNON TERRY                          CIVIL ACTION NO. 08-cv-1306

VERSUS                                        JUDGE HICKS

BOSSIER MEDIUM SECURITY                       MAGISTRATE JUDGE HORNSBY
FACILITY, ET AL

## REPORT AND RECOMMENDATION

### Introduction

Jessie Shannon Terry ("Plaintiff") filed this pro se civil rights action against three Bossier Parish sheriff's deputies based on allegations of excessive force during Plaintiff's incarceration at the Bossier Parish medium security facility.  Before the court is a Motion for Summary Judgment (Doc. 27) filed by Deputies Trace Smith, Rusty Murray, and Brian Goff.  For the reasons that follow, it is recommended that the motion be denied.

### Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), a summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Eighth Amendment Standard**

The summary judgment record indicates that Plaintiff was a DOC prisoner at the relevant time.  Accordingly, Plaintiff's excessive force claim is governed by the standards of the Eighth Amendment.  Whether an Eighth Amendment excessive force claim has been made out depends on whether the "force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995 (1992). The factors to be looked to include (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible official, and (5) any efforts made to temper the severity of a forceful response. Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).

**Defendants' Summary Judgment Evidence**

Defendants offer affidavits from Deputies Goff, Smith, and Murray.  Goff testifies that he noticed six inmates playing cards in one of the dorms.  He discovered that the inmates

were using pieces of torn playing cards as gambling chips.  Gambling is prohibited by facility rules.

Goff testifies that he took the six offending inmates to the administrative segregation area, with Deputies Smith and Murray serving as backup.  All of the inmates except Plaintiff admitted to gambling.  Those who admitted guilt were placed in administrative segregation for a short time and then returned to the dorm.

Plaintiff, according to Goff, was separated from the other inmates in order to remove his jumpsuit so that he could be searched.  Goff testifies that he saw a bulge in Plaintiff's sock, which was found to be pieces of playing cards that were being used as gambling chips. Goff testifies that he then ordered Plaintiff into an administrative segregation cell and ordered him to sit on the bunk with his hands behind his back.

Deputy Goff testifies the inmates at the facility are told when they arrive and on a regular basis that they are to keep their hands and arms behind their backs when they are in areas of the facility other than a dorm.  This rule, Goff testifies, is to ensure that deputies know inmates are not making any aggressive move toward them.  If an inmate removes his hands from behind his back, he is in violation of the facility rules.  Goff testifies that he "expressly instructed" Plaintiff to sit on the bunk with his hands behind his back.

Goff testifies that Plaintiff initially complied and sat on the bunk.  Goff testifies that he "bent over face to face" with Plaintiff and began "chastising" Plaintiff for gambling and lying.  Goff testifies that he was explaining to Plaintiff that if he had admitted the violation

he would have been returned to the dorm, but because of his lie he would spend the night in administrative segregation.  Goff testifies that he was alone in the cell with Plaintiff at this time.  Deputies Smith and Murray stood in the hall at the doorway of the cell.  Smith and Murray offer similar testimony.

Goff testifies that as he chastised Plaintiff, the look on Plaintiff's face was one of complete defiance and anger.  Suddenly, Goff testifies, Plaintiff sat forward and moved his hands from behind his back up toward Goff in an aggressive manner.  Goff testifies that he believed Plaintiff was making an aggressive move in an attempt to grab or strike Goff. (Goff testifies that he is five feet nine inches tall and weighs approximately 135 pounds, while Plaintiff's booking records show that he is five feet eleven inches tall and weighs 320 pounds.)  Goff said he feared for his safety under the circumstances and believed it was essential to use some force to defend himself and restore discipline.  Goff testifies that he "used a few quick open hand strikes" on Plaintiff to create distance between the two men.  The strikes made contact with the side and top of Plaintiff's head and with Plaintiff's hands and arms, which Plaintiff had raised up around his head.  Plaintiff then complied with the order to place his hands behind his back, and Goff moved out of reach.

Goff and the other two deputies testify that Plaintiff did not complain of any injury and did not appear to have any injury or mark on him after the incident.  They deny that Plaintiff requested medical attention or that any deputy used racially derogatory language toward Plaintiff (as Plaintiff alleged in his complaint).

**Plaintiff's Evidence**

Plaintiff has filed an affidavit as well as a declaration pursuant to 28 U.S.C. § 1746, both of which are competent summary judgment evidence.  See Hart v. Hairston, 343 F.3d 762 n.1 (5th Cir. 2003).  Plaintiff's testimony is roughly consistent with Goff's until the point where Goff bent down face to face with Plaintiff.

Goff testified that he was "chastising" Plaintiff when Plaintiff made an aggressive move toward him.  Plaintiff testifies that Goff asked Plaintiff, "Do you think I am dumb or crazy."  Before Plaintiff could respond, Plaintiff testifies, Goff "started beating Plaintiff in the head, face, and body with a closed fist."  Plaintiff testifies that he then responded out of instinct by removing his hands from behind his back to cover up and block "the many blows" that Goff was throwing at him.  Plaintiff said he could see all three deputies standing around him.  The beating stopped only when Plaintiff began to scream that he had a brain tumor.  Plaintiff testifies that the deputies then began to leave, but Goff turned and said, "You stupid ass nigger, I should kill your black ass."  Plaintiff testifies that he did not disobey any of the orders that the deputies gave him, and he did not "touch, grab, or strike" any of the deputies.

**Analysis: Deputy Goff**

There are obviously genuine disputes about how the use of force occurred, but Plaintiff's testimony must be accepted for summary judgment purposes.  Plaintiff's version of the facts is that Plaintiff obeyed all commands, sat on the bunk with his hands behind his back, and Deputy Goff suddenly began using his fists to punch Plaintiff in the head and face

for no apparent reason other than Goff's anger that Plaintiff had been gambling and lied about it.

With regard to the elements of the Eighth Amendment excessive force claim, Plaintiff's version of the facts does not indicate any need for Goff to apply force or that force was used in a good-faith effort to maintain or restore discipline.  Rather, Plaintiff's facts suggest that the force was employed maliciously to cause harm.

Goff argued in his reply memorandum that, despite Plaintiff's testimony, Goff is still entitled to summary judgment because there is no evidence that Plaintiff suffered more than a de minimis injury. The Supreme Court struck down the Fifth Circuit's requirement of a "significant injury" to prove excessive force under the Eighth Amendment, but the Fifth Circuit continues to require a plaintiff to have suffered at least "some form of injury." Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999), clarified on rehearing, 186 F.3d 633 (5th Cir. 1999).  In determining whether an injury caused by excessive force is more than de minimis, the court looks to the context in which the force was deployed.  Williams, 180 F.3d at 703.

"What constitutes an injury in an excessive force claim is therefore subjective – it is defined entirely by the context in which the injury arises."  Id. at 704.  For example, the plaintiff in Williams alleged that he received the same physical injury (choking) in two separate encounters.  The choking that occurred during an attempted (legal) search of the Plaintiff's mouth was deemed not a cognizable injury, but a second identical choking that

was committed in the absence of any valid reason to continue the physical contact was a potential injury that precluded summary judgment.  Id.

The Constitution does not permit a corrections officer to, for no reason other than a malicious or sadistic purpose, hit, slap, or otherwise physically attack an inmate so long as no visible or lasting injuries result.  Courts do sometimes look to the seriousness of the injury to determine whether the use of force could plausibly have been thought necessary, but pain inflicted by excessive force may be actionable under the Eighth Amendment even if it is not coupled with an injury that requires medical attention or leaves permanent marks.  Brown v. Lippard, 472 F.3d 384, 387 (5th Cir. 2006).

Goff, in support of his de minimis argument, attaches the affidavit of Nurse Jennifer McDaniel and a certified copy of Plaintiff's facility medical records.  The records contain no indication that Plaintiff sought medical attention at any time near the incident or for any injuries that might be connected to the incident.  Nurse McDaniel testifies that a medical attention request form in the record shows that Plaintiff knew the procedure to request medical care if he wanted it.  She adds that if Plaintiff had complained to medical personnel about an injury from the incident, that would be noted in the medical file.

Plaintiff testified, however, that the defendant deputies did not provide him medical care despite Plaintiff's complaint about head injuries and a request for medical attention. Plaintiff testified that, after the beating, he "made a number of requests to be seen by medical

but never received an answer."  There is, therefore, a genuine issue as to whether Plaintiff requested or needed any medical attention.

There is no summary judgment evidence of lasting injuries or marks caused as a result of the blows struck by Deputy Goff, but in the context depicted by Plaintiff, the multiple blows to the head and face with a closed fist may not be dismissed as merely de minimis. Such blows might, in another context where they were reasonably necessary to restore discipline, be considered de minimis, but Plaintiff's summary judgment evidence does not allow for any lawful reason for the use of such force in this case. To grant summary judgment for Goff would grant license to deputies to, for no legitimate reason, strike prisoners in the face with fists so long as no marks or injuries are caused. Accordingly, it is recommended that summary judgment be denied with respect to the excessive force claim against Deputy Goff.

**Analysis: Deputies Smith and Murray**

An officer "who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." Hale v. Townley, 45 F.3d 914 (5th Cir. 1995) (Fourth Amendment claim by an arrestee); Demouchet v. Rayburn Correctional Center, 2008 WL 2018294, *5 (E.D. La. 2008) (applying same standard to Eight Amendment claim by a prisoner). Viewing the summary judgment evidence most favorably to Plaintiff, there is a genuine issue of material fact regarding whether Deputies Smith and Murray had a reasonable opportunity to realize the

excessive nature of the force and to intervene to stop it.  The two deputies testified that they were outside the cell during the incident, but Plaintiff's evidence is that "Goff, Smith and Murray walked in the cell and closed the door."  Plaintiff said that he brought his hands up around his head to protect himself during the beating, began screaming, "Why are you beating me, I have a brain tumor," and looked up after the beating stopped to see "all the defendants was standing around him."  This testimony presents a scenario in which Smith and Murray were present in a small room when an unlawful beating that included several blows took place.  A reasonable juror could find, based on Plaintiff's evidence, that Smith and Murray had the opportunity to prevent or halt the use of excessive force. There are genuine issues of material fact. Summary judgment is not appropriate.

Accordingly;

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 27)** filed by Defendants be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of December, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE